Monell, J.
Two actions were brought against the corporation of the city of Hew York to recover damages for injury to the building on the southeast corner of Broadway and Twenty-ninth street, known as Bo. 1,192 Broadway. In July, 1863, a mob of rioters attacked the building, set it on fire, and it was totally destroyed. One of such actions was brought by the plaintiff to recover for injury to his estate in the premises as tenant by the curtesy initiate, and the other of such actions was brought by Ann Qreer, the wife of the plaintiff, to recover for injury to her estate as owner of the fee. The plaintiff’s action was tried by a justice of this court and a jury, and resulted in an assessment of the injury to the plaintiff’s estate at twenty thousand five hundred and twenty dollars, for which sum, with interest, he obtained a verdict. A motion was made upon the justice’s minutes for a new trial, which was denied. Judgment was thereupon entered, and the defendants appealed to the general term of this court from both the judgment and order.
The case made by the defendants, for the purpose of presenting the questions of fact or law, to be reviewed by the general term, contained no part of the evidence given on the trial, and only a single exception, namely, to the allowance of interest. Certain facts were said to have been established, namely, the nature of the plaintiff’s estate; the destruction of the buildings, and the value in money of the injury to the plaintiff’s life estate; but no evidence was furnished to the court to enable it to determine whether the plaintiff’s damages were ascertained upon correct principles. There being no evidence to review, *208 and the only exceptions taken being considered wholly untenable, the court affirmed the judgment and order.'
The action brought by Ann Greer was subsequently tried by another justice of this court without a jury. Proof was adduced which established the whole value of the property destroyed at and not exceeding thirty-seven thousand four hundred dollars. The age of George Greer, her husband, was ascertained to be sixty-nine. The justice thereupon computed the value of his life estate upon the principle applicable to life annuities, and deducted such value from the gross value of the property destroyed, and gave judgment in favor of Ann Greer for the remainder. In ascertaining the value of the life estate the justice computed the interest upon the whole value (i. e., thirty-seven thousand four hundred dollars) at six per cent., and multiplied the interest by the number of years’ purchase furnished by the Carlyle annuity tables. Such computation was made pursuant to the directions contained in the eighty-fourth rule of court, prescribing the mode of computation in such cases. The value of Ann Greer’s estate, as the owner of the fee, as thus established, was twenty-three thousand seven hundred and ninety-four dollars. Taking, however, the sum of twenty thousand five hundred and twenty dollars, recovered by George Greer, as the value of his life estate, and the sum of twenty-three thousand seven hundred and ninety-four dollars recovered by Ann Greer, as the value of her estate, we have an aggregate of forty-four thousand three hundred and fourteen dollars, or six thousand nine hundred and'fourteen dollars more than the entire and highest proven value of the whole property destroyed.
A motion was now made to set aside, vacate or open the judgment recovered in favor of George Greer, and for a new trial; or that the defendants be permitted to renew their motion for a new trial upon the minutes of the court, and for a resettlement of the case prepared for the appeal, by inserting therein the evidence given on the trial, and for a re-argument thereof.
Upon this motion it now appears that considerable evidence was given on the trial of the George Greer suit, which was necessary .to enable the jury to ascertain the value of his life estate; and it further appears that the principle adopted ' for ascertaining such value was by proof of the present value of the rents and profit^ of the premises for one year, and multiply *209 ing such value by the number of years, which, by the annuity tables, would be the probable duration of the plaintiff’s life. Ho deduction appears to have been made for taxes, repairs, or . insurance, the two former of which are chargeable upon the life tenant; nor was there any reduction' or rebate of interest upon the annual rental thus, in effect, paid in advance for the ensuing six or seven years. This motion is now made upon the ground that, through mistake, inadvertence, error or otherwise, the plaintiff has recovered at least six thousand nine hundred and fourteen dollars more than upon any principle properly applicable to the facts of the case he is entitled to recover.
I do not entertain a doubt that the plaintiff’s recovery was too large, and I am therefore clearly of the opinion that if no well settled principle of law or of the practice of the court is violated, the defendants ought to have an opportunity to correct the error. The power to do so is given in express terms by the 174th section of the Code, which provides that the court in its discretion, and upon such terms as shall be just, may relieve a party from a judgment, error or other proceeding taken against him, “ through his mistake, inadvertence, surprise or excusable neglect.” I cannot persuade myself that the mode of ascertaining. the damages in this case was adopted by the court or assented to by the counsel to the corporation, upon a full and careful examination of the question. Indeed, it does not appear that any question as to the correctness of the rule was raised on the trial, and it seems to have been tacitly assumed that it was the correct rule. I am, therefore, led to believe that through inadvertence, or, perhaps, excusable neglect or mistake of the counsel for the defendants, the case was allowed to go to the jury upon what I deem to have been a clearly erroneous rule of damages.
Under such circumstances I can have no hesitation in opening the case for a re-investigation, if the inadvertence or neglect has been excused. Great laches in seeking relief from mistakes are generally a complete answer to a motion for such relief; and courts will always, and very properly, scrutinize closely any attempt to avoid consequences, which a party has brought upon himself by his own act; and great delay in applying for relief is always a circumstance of suspicion, and will incline the mind to doubt the good faith of the application. But where there is no reasonable ground to question the integrity of the appliea *210 tion, and where no principle of law will be -invaded and the neglect is excused, there should be no reluctance to afford relief.
This action was defended by the counsel to the corporation, who is the law officer of the city. .The answer of the defendants put in issue all the allegations in the plaintiff’s complaint. The action was tried at the May term in 1865, and evidence'to establish the plaintiff’s cause of action and the basis upon which the jury were to estimate the plaintiff’s damages, given, and the jury were instructed to adopt the rule of damages claimed by the plaintiff and assented to by the corporation counsel, as the correct rule. The case on the appeal was heard in the succeeding October general term and decided at the ¡November general term. The incumbent of the office of the counsel to the corporation during these proceedings was succeeded in liis office by the present counsel on the first of January last, and the pending suits and proceedings against the corporation were at that time delivered to him. It does not appear that the error now complained of was discovered by the late corporation counsel, who does not appear to have been aware that any doubts could be entertained of the correctness of the rule adopted and to which he yielded on the trial, no doubt believing it to be the correct rule. The present corporation counsel, when he entered upon his office, found a mass of unfinished' litigation, which, with his other duties constantly accumulating, rendered it impossible at once to investigate all the cases in his office. Yet this motion is made in a little over two months from his assumption of office. The counsel to the corporation is an independent department of the corporate government, and represents the inhabitants of the county. He has charge of and is responsible for the conduct of all suits and proceedings against the city. To him are confided interests of great magnitude and importance, and it is his duty, independently of any other department, to defend the city and the taxable inhabitants thereof against all actions which in his, judgment cannot be sustained; and it is also his duty, whenever in his judgment the interests of the city and its taxable inhabitants require it, to institute lawful proceedings to relieve them from any improper burthen. And the duty is none the less imperative whether the burthen has been imposed through mistake of himself or of his predecessor in *211 office, or mistake of any other department of the city government.
The measure of neglect which is applied to cases against individuals for their own acts or neglect, for which they are themselves responsible, ought not to be applied to public functionaries representing parties who are made liable for acts or omissions of which they are ignorant. The principle of the maxim, Nullum, tempus oeeurrit regi, in a modified form, is applicable to such a case, namely, that the community or its representatives cannot always be supposed to be aware of an unjust invasion of its rights. The corporation of Rew York has no entire control over their counsel, he being an elective officer, so as to direct or change him; and unless the courts can afford them protection or relief, when brought to their notice, serious losses might fall upon the city treasury by the neglect or delinquency of an irresponsible official.
The several adjudications in this case, which it was so strongly urged should be regarded as concluding the corporation upon this motion, do not afford, it seems to me, a sufficient reason for withholding the relief they now seek to obtain. I believe an error was committed on the trial of the action which should not go uncorrected, if the court have power to correct it. And the plaintiff should not object, as I believe he will not, to have his judgment reduced, if'he has recovered more than the law awards him.
I am, therefore, of opinion that so much of the motion as is necessary to give the defendants the relief they seek should be granted on terms. The neglect to apply at an earlier day is to my mind sufficiently excused, and the defendants should not be injuriously prejudiced by the delay of a public official, more especially as the plaintiff cannot be injured, except by a short prolongation of his action.
I do .not intend, and I mean it shall be so understood, that this decision shall be regarded as a precedent or as affording any encouragement to relaxing proper attention to the defence of suits against the corporation. In conducting the large law business devolving upon the counsel to the corporation mistakes and errors are almost inevitable, and. more or less delay cannot, probably, be avoided; but only in clear cases of excusable negligence or palpable error will 'the courts feel inclined to relieve the corporation from the consequences of mis *212 takes of the city officials. I have come to the conclusion, with much hesitation, however, that the order denying the motion for a new trial and the order affirming the same should he set aside, the case resettled and a re-argument ordered. In no other way, without the consent of the plaintiff, can the error complained of be corrected. An order may be entered that unless the plaintiff, within twenty days from the entering and service of the order upon this decision, stipulates in writing to deduct from his judgment the sum of six thousand nine hundred and fourteen dollars, with interest from September 23, 1863, then that, upon payment by the defendants to the plaintiff of all the costs in the action since the trial, including the costs of the appeal to the Court of Appeals, to be taxed, and of ten dollars costs of opposing this motion, the defendants have leave to re-settle the case and reargue their motion for a new trial at the special term; and that the order denying the motion for a new trial on the minutes of the justice and of the judgment affirming such order be vacated and set aside; and that until the decision of such motion all proceedings on the judgment be stayed.